# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| YEHUDA DRAIMAN, | ) |
| | ) |
| Appellant, | ) |
| | ) No. 04-C-5532 |
| v. | ) |
| | ) JUDGE DAVID H. COAR |
| MULTIUT CORP., | ) |
| | ) |
| Appellee. | ) |

| | |
|---|---|
| YEHUDA DRAIMAN, | ) |
| | ) |
| Appellant, | ) |
| | ) No. 04-C-5533 |
| v. | ) |
| | ) |
| NACHSON DRAIMAN, | ) |
| | ) |
| Appellee. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Appellant Yehuda Draiman's ("Appellant," or "Yehuda Draiman") appeal from the United States Bankruptcy Court pursuant to 28 U.S.C. § 158. Two cases, *Draiman et al. v. Multiut Corp.*, 04-B-11665 and *Draiman et al. v. Draiman*, 04-B-11689, were dismissed by the bankruptcy court in favor of appellees Multiut Corporation ("Multiut") and Nachson Draiman (collectively "Appellees"), and against Yehuda Draiman, M. Draiman Corporation, and U.S. Gas & Energy Corporation (collectively "alleged creditors") in orders dated March 26, 2004. Appellant also challenges orders in these two cases that assessed actual and punitive damages, dated June 28, 2004 and July 13, 2008, respectively. As the

-1-

bankruptcy court dispensed with both matters in the same sequence of hearings, this opinion will address Appellant's arguments with respect to both appeals simultaneously.

**1.  FACTS**

Appellant has raised several challenges, claiming that: (1) the bankruptcy court proceedings were improperly administered in violation of his right to due process; (2) the court was mistaken in finding that Appellant filed his involuntary petitions in bad faith; and (3) the damages levied against him were unwarranted and unfounded.

The parties relevant to this matter – two brothers and their affiliated corporations – have a lengthy litigation history in bankruptcy and state court proceedings.  (*See generally* Appellees' Resp. at 3-7.)  In its current form, the dispute entered the bankruptcy court by way of involuntary petitions for Chapter 7 bankruptcy, filed March 24, 2004[1] pursuant to 11 U.S.C. § 303 and on behalf of Yehuda Draiman, M. Draiman Corporation, and U.S. Gas & Energy Corporation.

On March 26, 2004, Appellees (then debtors) filed an emergency motion to dismiss the case and assess costs, fees, and damages.[2]  A hearing was held that afternoon before the Hon. Judge Eugene R. Wedoff on an emergency basis, though Yehuda Draiman did not attend.  When asked what notice had been provided Appellant, Appellees stated that he had been contacted via fax, messenger, and oral communication.  At the hearing, Appellants argued that the emergency was warranted due to the fact that Multiut was suffering severe and immediate economic damages as a result of the involuntary petitions.  They further argued that the claims were

---

[1]All dates referenced in this opinion, unless otherwise noted, refer to the year 2004.

[2]Appellees also moved for the imposition of criminal sanctions, which was denied by the bankruptcy court as unwarranted.

meritless and improperly before the bankruptcy court.  Judge Wedoff agreed, and dismissed the case without prejudice.

At the March 26 hearing, Appellants also argued that they were entitled to costs, fees, and damages under the law.  With respect to damages – which required a showing of bad faith on the part of the involuntary petitioners – Appellees reported that Appellant had transmitted many copies of the involuntary petitions to Multiut's customers and suppliers.  Appellees argued that this represented a clear showing of bad faith warranting actual and punitive damages.  Judge Wedoff, however, refused to rule on this issue, as it did not warrant emergency consideration.  After a hearing was held on April 1 – and which Yehuda Draiman attended – the Hon. John D. Schwartz placed constraints on Appellant's ability to file any future actions in bankruptcy court, and enjoined him from communicating with third parties regarding such proceedings.

In response to Appellant's filing of a motion to reconsider the March 26 dismissal and reinstate the involuntary petitions, a hearing was held on April 20, 2004.  The bankruptcy court upheld the emergency judge's finding that there was no basis for asserting jurisdiction over the case under 11 U.S.C. § 303.  Judge Schwartz provided an additional rationale warranting dismissal, stating that the two corporate petitioners were not represented by counsel as is necessary to stand before the bankruptcy court.  The motion to reconsider was therefore denied.

On May 21, 2004, Appellant filed another motion to reconsider.  At a hearing on May 24, this too was denied.

On June 21, 2004, the parties again appeared before Judge Schwartz, for the purpose of proving damages.  Apparently, Appellant had requested a 10-minute postponement of this hearing after being held up in traffic.  The court delayed the proceedings for approximately 15

minutes and then began. The only evidence added to the record in this hearing was the testimony of Nachson Draiman, by way of direct examination and additional questioning by the court. Yehuda Draiman entered the courtroom at approximately 11:10, forty minutes after the scheduled time and over twenty minutes into the proceedings. The court found in favor of Appellees for damages in the amount $400,000, and attorneys' fees in the amount of $50,000. Whether or not additional punitive damages would be assessed was postponed until a later hearing in light of an *instanter* motion filed by Yehuda Draiman.

The final hearing before Judge Schwartz took place on July 12, 2004. The primary matters before the court were an additional motion to reconsider filed by Appellant, as well as the question of whether punitive damages should be levied. The court stated that the lack of jurisdiction had not been substantively challenged, and suggested that Appellant's complaints regarding due process were misdirected, as any procedural failings resulted from his own error. The court also outlined the history of the relationship between the parties, and found that in light of Appellant's actions,[3] punitive damages in the amount of $900,000 were warranted.

**2.    STANDARD**

On appeal to a district court, a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *Monarch Air Serv. v. Solow (In re*

---

[3]Appellant claims that he was never aware of the case's dismissal when he faxed copies of the involuntary petitions to Multiut's customers and suppliers. The bankruptcy court weighed evidence purporting to show that Appellant was aware, which would have shown both abuse of the judicial process and flagrant disregard of a court order. (*See, e.g.*, 4/20/04 Hr'g Tr. of at 8-10.) In light of oral testimony and circumstantial evidence regarding the timing of the faxes, the bankruptcy court concluded that Appellant was not credible in its denials, and that he had in fact been notified before making the communications. (*See* 7/12/04 Hr'g Tr. at 6.) Particularly as this issue involved questions of witness credibility – appropriately addressed by the factfinder – there is sufficient evidence to support this finding of fact.

-4-

*Midway Airlines, Inc.)*, 383 F.3d 663, 668 (7th Cir. 2004). "Where both the relevant law and the specific facts are clear, and the job of the bankruptcy court was to apply the law to the facts in the case, we reverse that court's conclusion only if clearly erroneous." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002). A finding is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.*

"[D]ue regard shall be given to the opportunity of the bankrupt to judge the credibility of witnesses." *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004); Fed. R. Bankr. P. 8013 (West 2003).

3.  **ANALYSIS**

The grounds for appellate review asserted by Appellant are not compelling. Yehuda Draiman's claims are generally undermined by the fact that he does not now show, nor has he ever shown, a meritorious argument for invoking the jurisdiction of the bankruptcy court. Allegations of misconduct against Appellant's brother or any other party are generally irrelevant. Appellant was shown every due process right at his bankruptcy proceedings. Any prejudice that Appellant might have suffered as a result of irregularities in the bankruptcy proceedings – which were non-existent or caused by his own actions – were mitigated by the fact that he was given multiple opportunities to preserve his case. It was Appellant's inability to address the fatal failings in his involuntary petitions, and his attacks on an opposing party outside of court, that fully justify a finding of bad faith.

    a.    <u>Merits of Appellant's Petition</u>

Appellant does not directly challenge the bankruptcy court's grant of dismissal, and the issue is therefore not now before this Court. However, it should be noted that, as the record now stands, there is no perceivable way in which Appellant's claim could have been sustained, and therefore dismissal was unavoidable.

An involuntary case must be dismissed for lack of jurisdiction if the petitioning creditors fail to meet the requirements for an involuntary petition as set forth in Section 303(b) of the Bankruptcy Code. *See Matter of Busick*, 831 F.2d 745, 749-50 (7th Cir. 1987). In this instance, Appellant has never refuted the fact that the petition was brought "on behalf" of two defunct alter-egos lacking the necessary legal representation. Two of the three necessary entities were therefore incapable of introducing any dispute at all, much less the *bona fide* dispute required for assertion of jurisdiction under bankruptcy law. *See Busick*, 831 F.2d at 749-50. The bankruptcy court therefore properly held that jurisdiction could not be sustained where there was, in effect, only one party to the involuntary petition. *See* 11 U.S.C. § 303(b) ("Any involuntary case against a person is commenced by filing with the bankruptcy court of a petition under chapter 7 or 11 of this title...by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute."). Appellees have also pointed to additional issues – such as relevant state court rulings and set-offs for previous judgments – that have not been contradicted, and which undermine the putative creditors' ability to show *bona fide* disputes. (*See* Appellees' Resp. at 20-21.)

b. <u>Due Process Afforded Appellant</u>

Appellant makes several claims purporting to show that due process rights were not respected in the bankruptcy court, including: (1) lack of proper notice at the emergency motion

hearing held March 26; (2) holding of an ex-parte hearing when Appellant was running late on June 21; and (3) improper assistance to Appellees. There is no merit to any of these claims.

   *i.*  *Notification*

Appellant maintains that he was not provided with proper notification of hearings held by the bankruptcy court. Presumably, this refers to the hearing of March 26, 2004, which was held on the same day as the motion to dismiss was filed, and which Appellant did not attend. However, the motion was filed on an emergency basis, and it is clear that the normal notification requirements can be waived in such an instance. Also, every effort seems to have been made to notify Appellant of the proceedings.[4] In any event, in light of the Appellant's absence, the bankruptcy court took the appropriate action by dismissing the matter, but ruling without prejudice so as to protect an absent party's rights. When Appellant later appeared before the bankruptcy court, he provided no evidence or argument that would have affected the emergency hearing in any way.

   *ii.*  *Question of delay*

Appellant also challenges the bankruptcy court's decision to commence the June 21 hearing in his absence. As of that date, the court had already postponed the hearing once to accommodate Appellant's schedule. However, on the date in question, Appellant was allegedly

---

[4]Appellant makes overbroad and unsupported claims that notice was improperly provided, stating that Appellees "dropped his notices in the bushes," etc. (*See* Appellant's Reply at 5.) However, the weight to be given such vague claims is largely dependent on Appellant's credibility, something that is properly evaluated by the bankruptcy court and afforded a high degree of deference. *See In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989). In addition, these arguments do nothing to contradict Appellees' assertions that they "provided a facsimile copy of the motion to Yehuda Draiman [and] gave oral notice to the attorney representing Yehuda Draiman and his alter ego corporations in the State Court Action that morning." (Br. of Appellees at 18.)

running late as a result of traffic problems. He requested and was granted a 10-minute stay of the proceedings as a result of his tardiness, which was extended to 15 minutes after he failed to arrive. By the time he finally arrived, the proceedings had already commenced and Appellees had nearly finished presenting their case. Appellant requested a delay, was granted it, and was late even for the postponed schedule. This Court is in no position to second-guess the running of a bankruptcy judge's courtroom, based only on the claim that the judge should have been more tolerant of a party's inability to arrive at a hearing on time.

### iii. Objectivity of the Bankruptcy Court

Appellant also claims that there is a "sub-issue," a question of "whether the Court can act as the debtor's attorney and assist[] their qualified counsel in the absence of the appellant." Appellant is correct that the bankruptcy court's interactions with Appellees was more collegial than his own, a fact not surprising where Appellant repeatedly wasted the time and resources of the court with irrelevant factual submissions, failed to address the only relevant matters, and ignored the bankruptcy judges' opinions and statements. Appellant mistakenly perceives as improper the degree of communication necessary to move a case forward. At no point in the record does the bankruptcy court appear to cross the line into improper advocacy for Appellees.

### iv. No Impact

Any concerns regarding Appellant's due process rights – and this Court has been unable to find any – are mitigated by the fact that he was afforded multiple opportunities to explain his case in subsequent hearings or motions to reconsider. The motion to dismiss that effectively terminated Appellant's case was granted at the March 26 hearing. He presented multiple briefs after that time, and made multiple appearances, yet never presented evidence to contradict

Appellees regarding the substantive issues on which the case was decided. Therefore, Appellant has shown no harm or prejudice that might have been caused, even if his allegations of procedural errors were supported.

In these instances, and for these reasons, this Court finds that Appellant was afforded due process in the bankruptcy proceedings.

    c.    <u>Bad Faith and Punitive Damages</u>

Appellant also claims that there was insufficient basis for the bankruptcy court's finding that he brought this case in bad faith, opening him up to actual and punitive damages. Appellees argued to the bankruptcy court that the involuntary petitions were filed "solely to cause economic injury and embarrassment to Nachshon Draiman and Multiut." (Appellees' Resp. at 8.) For the reasons stated below, there is no basis for reconsidering the bankruptcy court's finding of bad faith in this matter; the case was improper from its commencement, and Appellant's conduct during the proceedings grossly abused the court process.

The bankruptcy court provided a summary of the events leading up to its determination of bad faith. (*See generally* 7/12/04 Hr'g Tr. at 7-11.) In it, the court highlighted: the inherently flawed nature of the suit, Appellant's knowledge of that futility, and his refusal to provide any answer to those flaws; Appellant's blatant use of extra-judicial "vindictive acts" against opposing parties; repeated yet unrealized opportunities to correct the substantive flaws in Appellant's case; and Appellant's voluminous irrelevant arguments and evidence. (*Id.*) From all of this, the bankruptcy judge concluded: "[Yehuda Draiman's] continued attempts to use this court are consistent with of behavior that appears on their face to violate the provisions of the United States Criminal Code. His insistence on actions to date are contentious [sic] of this court,

to say the least, and he is continuing to do so. Punitive damages resulting in Yehuda Draiman's abuse of the bankruptcy process will be awarded in the amount of [$900,000]." (*Id.* at 11.)

This amounts to a finding of bad faith that is treated as a conclusion of fact, reviewable under the clearly erroneous standard. For purposes of evaluating damages under 11 U.S.C. § 303(i), whether there was bad faith falls to both objective and subjective decisions regarding the propriety of the involuntary petition. *See In re Fox Island Square P'ship*, 106 B.R. 962, 967-68 (Bkrtcy. N.D. Ill. 1989). According to either test, Applicant fails.

The burden was on Appellant to show that he satisfied each of the elements found in 11 U.S.C. § 303(b)(1). *See In re Downstate News Group, Inc.*, 2006 WL 1520267, at *1 (Bkrtcy. C. D. Ill. 2006). His failure to make even the most basic attempt to satisfy these elements can amount to bad faith. "The filing of a petition may be sanctionable for bad faith under § 303(i)(2) when a petitioner disregards facts which have an impact on the validity of their petition." *In re Val W. Poterek & Sons, Inc.*, 169 B.R. 896, 905 (Bkrtcy. N. D. Ill. 1994). Specifically, a creditor acts in bad faith under § 303(i)(2) when it files an involuntary petition knowing it does not have the requisite number of creditors. *Id.* (citing *In re McDonald Trucking Co.*, 76 B.R. 513, 519 (Bankr. W. D. Pa.1987)). No reasonable petitioner would approach the bankruptcy courts where the flaws are manifest and incontestable, namely, that only one of three necessary petitioners appeared before the bankruptcy court and any claims are clearly contestable.

When viewed in terms of Appellant's subjective intent, there is similarly no question that bad faith was shown in filing the involuntary petitions. The bankruptcy court was explicit on this point: "I think you're entitled to [punitive damages]. I don't think there is any question that this was done on purpose to harm without cause. I think that is a given in this situation. It was

dismissed immediately upon the motion being made...It's a terrible thing to do to people, just a terrible thing." (6/21/04 Hr'g Tr. at 21.) Any claim to the contrary is completely undermined by Appellant's choice to send copies of the involuntary petitions to business associates of Multiut. Plaintiff claimed that he was motivated to recover property that was wrongly denied him, or protect the property rights of those around him. (*See* Reply Br. at 3-4 ("I reasoned that unless a United States Trustee got control of the Multuit Corporation assets and Nachson Draiman's assets, the assets would all disappear and not only would my ability to collect the compensation and debts that is due me, but the people who I 'pray with' and who have been loyal to me all my life would lose millions of dollars.").) Filing the involuntary petitions alone – if done properly – would arguably have moved in the direction of these goals. Instead, by sending out copies of the petition, Appellant showed that his primarily motivated to attack his brother and Multiut, an approach to the judicial proceedings born out of personal vengeance rather than respect for the proper role of the courts.

The bankruptcy court did not make clear what test for bad faith was applied in this case. However, the conclusion of the court can be validated through any available test: objectively, Appellant's case would never have been brought by a reasonable creditor, as there are a multitude of reasons that the involuntary petitions would have failed; subjectively, Appellant's complete failure to respect the proper role of the court, and instead abuse it to his own ends, represents an improper motivation evidencing bad faith. Therefore, according to any analysis of this case, Appellant was acting in bad faith. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 398, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (stating that it could not find that the lower court "abused its discretion in declining to find the neglect to be 'excusable' "

if there was "any indication at all of bad faith"). There is therefore no basis for reversing the bankruptcy court's finding on this issue.

        d.      <u>Challenged Damages Calculations</u>

Finally, Appellant challenges the manner in which the bankruptcy court calculated damages in this case, and maintains that there was no factual basis for the significant judgment levied against him by the court.

Appellees maintain that this argument has been waived, for failure to raise the issue before the bankruptcy court. However, this is not entirely clear from the record. At the June 21 hearing, Appellant raised a motion regarding "reconsideration of the penalty," and though it was denied by the court, it is less clear whether it introduced to the bankruptcy court challenges based on damages evidence rather than other, more general, due process concerns. *See* 6/21/04 Hr'g Tr. at 30; 7/12/04 Hr'g Tr. at 9-10 (denying a motion to reconsider that "alleges that [Appellant] was denied due process" and seeking "a rehearing of the June 28th order establishing the costs incurred") Appellant raised the issue in a brief in the record, that appears to be the motion filed in open court on June 21. (*See* Petitioner-Creditor's Mot. to Reconsider Order of 6/21/04 at ¶ 5 ("That the fines and judgments that this Court entered on June 21, 2004 are outrageous and discriminatory – this is especially true as *no evidence was taken*, movant was not provided the opportunity to address the Court, and the Court entered its decision prior to reading the movant's response to the debtor's RESPONSE TO THE MOTIONS FOR SANCTIONS.") (emphasis added). However, while this document is dated June 25, 2004 and labeled "Motion to Reconsider," it was filed by the bankruptcy court on July 20, 2004, the date of the appeal, and it is unclear whether the argument was properly presented. While Appellant has failed to

contradict Appellees' waiver argument with citations to the record, questions nonetheless remain which prevent this Court from finding that the damages evidence argument has been waived.

That said, no evidence has ever been presented to contradict the adequacy of the damages calculations made by the bankruptcy court. In light of Appellant's manifest bad faith, a wide range of financial assessments were available to Appellees; 11 U.S.C. § 303(i) provides that "[i]f the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment: (1) against the petitioners and in favor of the debtor for costs or a reasonable attorney's fee; or (2) against any petitioner that filed the petition in bad faith, for any damages proximately caused by such filing or punitive damages." This language exposes a bad faith involuntary petitioner to any or all of the fees, costs, actual damages, and punitive damages discussed. *See In re Fox Island Square P'ship*, 106 B.R. 962 (Bkrtcy. N.D. Ill. 1989). Because bad faith was shown, the bankruptcy court was justified in awarding Appellees attorneys' fees, costs, actual damages, and punitive damages.

Appellees presented testimonial evidence regarding damages at the hearing before Judge Schwartz on June 21. (*See generally* 6/21/2004 Hr'g Tr. at 6-21.) Appellant does not seem to question the $50,000 in attorneys' fees and costs assessed by the bankruptcy judge, but challenges the amount of actual damages assessed based on an alleged lack of evidence. (*See* Appellant's Reply at 7-12.) The bankruptcy judge quizzed Appellees on the amount of damages suffered, including Multiut's lost monthly profits over a two-month period and the number of employee hours spent in undoing the harm caused by the improper filing. The court was satisfied with the credibility and sufficiency of the oral evidence presented. As a result of

Appellant's malfeasance in transmitting copies of the involuntary petitions, the court found that the actual damages resulting from the action in bankruptcy totaled $400,000.

Oral testimony and rough estimates generally provide valid bases for calculating damages, and the approach is particularly justified where the court must accomplish the difficult task of determining the amount of profits lost as a result of Appellant's actions. *See Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1367 (7th Cir. 1996) ("If plaintiff's proof leaves uncertain whether plaintiff would have made any profits at all, there can be no recovery. But once this level of causation has been established for the fact of damages, less certainty (perhaps none at all) is required in proof of the amount of damages. While the proof of the fact of damages must be certain, proof of the amount can be an estimate, uncertain or inexact.") (quoting Robert L. Dunn, Recovery of Damages for Lost Profits § 1.3 at 11). In the absence of any evidence to the contrary regarding the basis and manner of this calculation, this Court rejects Appellant's complaint that damages evidence accepted by the bankruptcy court was overly vague or speculative.

With respect to the amount of punitive damages, it is well within the bankruptcy court's discretion to decide what amount reflects the severity of bad faith involved and the degree of punishment necessary. The bankruptcy court set punitive damages at twice the total value of the actual damages, costs, and fees, or $900,000. (*See* 7/12/04 Hr'g Tr. at 11-12.) As the bad faith in this case is obvious, the impact on Appellees' business is significant, and the importance of deterring those who would similarly abuse the involuntary petition process is compelling, this Court sees no reason to question this conclusion regarding the proper amount of punitive damages. *Cf. Munro v. Golden Rule Ins. Co.*, 393 F.3d 720, 721-22 (7th Cir. 2004) (discussing

the constitutional concerns awarding punitive damages amounting to ten times total compensatory damages in "simple economic loss cases") (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 410, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)).

For these reasons, this Court rejects Appellant's challenge to the bankruptcy court's calculation of damages. *See Adams Apple Distrib. Co. v. Papeleras Reunidas, S.A.*, 773 F.2d 925, 930 (7th Cir. 1985) ("[F]indings as to proof of damages are findings of fact which will not be set aside on appeal unless clearly erroneous.").

**4.    CONCLUSION**

Appellant levels significant legal charges against one or more of the Appellees in this case, including threatening behavior, fraud, and abuse of process. One or more of these claims may be sustainable in another venue, and if Yehuda Draiman feels wronged by his own brother or the justice system in general, that is regrettable. However, his use of the bankruptcy court to advance personal matters is improper to the point of abuse. Appellant has therefore failed to show that the bankruptcy court's treatment of any aspect of his case was clearly erroneous or otherwise improper. For the foregoing reasons, the bankruptcy court's orders dismissing the involuntary petitions and assessing costs, fees, and damages are AFFIRMED.

          Enter:

          /s/ David H. Coar

          _____
          David H. Coar
          United States District Judge

Dated: **March 31, 2008**